AO 106 (Rev. 04/10)  Application for a Search Warrant



**UNITED STATES DISTRICT COURT**

for the

Eastern District of California

FILED
OCT 03 2018
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>Undeveloped land within the Stanislaus National Forest,<br>County of Tuolumne, with Approximate GPS Coordinates<br>N38° 09' 01" W120° 09' 51"  and Any Satellite sites | )<br>)<br>)<br>)<br>)<br>) |

Case No.  1: 18 SW  0 0 3 9 3 EPG

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A, incorporated herein by reference.

located in the _____Eastern_____ District of _____California_____ , there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 841 | Manufacture, Possession w/Intent to Distribute a Controlled Substance |
| 21 U.S.C. 846 | Conspiracy to Manufacture, Possess a Controlled Substance |

The application is based on these facts:

See attached affidavit.

- ☐ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Joseph M. Cook, Special Agent, US Forest Service
*Printed name and title*

Sworn to before me and signed in my presence.

Date:  10/2/18

City and state:  Fresno, CA

_____
*Judge's signature*

Erica P. Grosjean, US Magistrate Judge
*Printed name and title*

**AFFIDAVIT OF JOSEPH M. COOK IN SUPPORT OF APPLICATION FOR SEARCH**

**WARRANT**

### I. AFFIANT'S TRAINING AND EXPERIENCE

I, Joseph M. Cook, being duly sworn, do hereby swear or affirm:

1.      I am a Special Agent with the United States Forest Service (USFS), and have been since April 2018.  Prior to being a Special Agent, I was a Supervisory Law Enforcement Officer (Patrol Captain) with the US Forest Service for approximately three and a half years. Prior to being a Patrol Captain with the Forest Service, I was a Law Enforcement Officer with the U.S. Forest Service for four years.  I am a graduate of the Federal Law Enforcement Training Center's Land Management Police Training Program (2010).  My primary duties include detecting, investigating, apprehending, and prosecuting criminal activity on and relating to National Forest System lands.  I have the powers of a California State Peace Officer per California Penal Code section 830.8 (a) and (b).

2.      I have conducted numerous controlled substance investigations and have arrested/cited many persons for being under the influence, possession, manufacturing and transportation of various controlled substances and illegal drug paraphernalia.  I have investigated or participated in the investigation of numerous clandestine, outdoor marijuana cultivation sites on federal, state and private lands.  The marijuana cultivation sites have been in various stages of production.  I have flown marijuana reconnaissance missions with officers and agents who have attended the DEA Aerial Cannabis Observation School and have spotted marijuana gardens by air.  I have also taken part in marijuana garden raid and reclamation operations, along with residential search warrants related to marijuana cultivation investigations.

3.      While employed as a LEO, I attended an 80-hour Drug Enforcement Training Program

course given by the USFS, which focuses specifically on marijuana cultivation activities on

Forest Service Lands.  I have testified in front of a Grand Jury, and written multi-jurisdictional

operations plans related to marijuana cultivation investigations on public lands within the Eastern

District of California.

4.      During the course of my work, I have had the opportunity to converse with numerous

Law Enforcement Officers and drug enforcement officers, informants, as well as admitted and

known drug traffickers, including outdoor marijuana growers/traffickers, as to the methods,

regarding the manufacture, importation, transportation, distribution and sales of controlled

substances.

5.      Through prior investigations and training, I have become familiar with the types and

amounts of profits made by drug dealers and the methods, language and terms that are used.  I

am familiar and have participated in various investigative methods including, but not limited to,

visual surveillance, interviewing of witnesses, search warrants and use of confidential

informants.  I have worked joint investigations with various experienced Law Enforcement

Officers who are trained in narcotics investigations and I have drawn from their knowledge and

expertise in the field of narcotics enforcement.

6.      Typically, drug traffickers possess firearms and other dangerous weapons to protect

themselves or their contraband. Based on my training, experience and discussions with other

experienced narcotic agents, I know that firearms are often found at marijuana cultivation sites

on public lands.

7.      I know that marijuana traffickers often cultivate marijuana on public lands and on private

forest lands adjacent to public lands, throughout the country, including the Eastern District of

California.

8.      Based on my training and experience, through discussions with experienced narcotics

investigators and through the information I have learned through investigations, I know that most

outdoor live-in marijuana cultivation operations are generally conducted in a similar manner.

Outdoor marijuana cultivation operations involving large number of marijuana plants require

substantial labor to tend to the plants, provide logistical support for the labor force tending to the

plants and provide financial support until proceeds for the processed marijuana are received.

9.      Outdoor marijuana cultivation organizations start exploring and scouting potential

cultivation sites in the late winter and early spring.  These organizations are normally in search

of areas in which the snow melts comparatively early, in close proximity to a viable water supply

and isolated to avoid encounters with recreationalists.  Most outdoor marijuana cultivation

organizations desire to plant marijuana plants as early as possible in order to harvest the plants as

early as possible and potentially tend a second crop for the year before it becomes too cold in the

late fall and early winter.  Additionally, during scouting excursions, these organizations attempt

to identify drop points that can be utilized for the delivery of supplies, equipment and people,

which are in adjacent proximity to the cultivators' trail heads and/or cultivation sites.  A drop

point is a designated location where the drivers can deliver equipment, supplies and workers for

the cultivations sites(s).  Drop points are normally located along a rural route so that the

cultivation workers can walk the delivered supplies to the camp area and the marijuana from the

grow site to the drop point.  It is normal to locate a distinct trail system near the drop points.  On

most occasions, these organizations favor their drop points to be located in remote areas where law enforcement and recreational traffic is scarce, in order to avoid detection.

10.     Once an outdoor marijuana cultivation organization identifies possible cultivation sites, the organization engages in procuring needed supplies to prepare the land and locate and set up a water source for the cultivation site.  In many cases, fertilizers, herbicides, pesticides and irrigation equipment are acquired from various vendors, as well as through illegal sources, such as through smuggled items brought into the United States.

11.     As equipment and supplies for the marijuana grow site are procured, the outdoor marijuana cultivation organization starts to deliver items to the area of the marijuana cultivation site.  Usually, these items are delivered to the pre-designated drop points.

12.     The land is prepared for planting and watering of the marijuana plants.  Once a natural water source is identified and tapped into and a water reservoir is established, an irrigation system is constructed.  The natural vegetation is cut, removed or thinned to make space for the marijuana plants.  Locations for the camp are also established.

13.     After the land has been prepared for planting, the marijuana seeds or plants are placed into the ground.  For cultivation sites that use live-in workers, camps are prepared and the live-in workers establish unauthorized occupancy in the cultivation areas.

14.     Throughout the growing season, which typically lasts between three and six months, various supplies, equipment and groceries are purchased by or provided by individuals who deliver the supplies to the grow sites.  These individuals are frequently referred to as "lunch men."  The lunch men deliver needed supplies and workers to the designated drop point.  The

lunch men also retrieve processed marijuana from the grow site and pick up workers from the marijuana grow site.

15.     As the marijuana plants mature, more workers arrive at the cultivation site(s) to help with the labor involved in harvesting and processing of the marijuana buds.  The harvested marijuana is laid out to dry in processing areas within the cultivation site(s) and as it becomes dried, it is packaged and moved to the drop point for pick up by the drivers for delivery to the distribution centers or to the organizations leadership.

16.     Outdoor marijuana cultivation organizations recently have become more dependent on the use of cellular telephones to facilitate communications in furtherance of their marijuana cultivation scheme. Cellular telephones are used to communicate among co-conspirators, distributors, purchasers, drivers, the laborers in the grow site(s) and their leaders. Communications include coordinating the procurement of supplies and equipment and oversight of the progress of the tended to marijuana plants.  Some cultivation sites are located in areas where there is no cellular phone service.  In these situations, a designated check in time is established, in which the growers walk to an area where there is cellular service to place their cellular telephone calls.

17.     Upon completion of harvesting the marijuana plants, the sites are abandoned, leaving behind materials such as pesticides, herbicides, fertilizers, trash, propane tanks and food items. The items left behind attract wildlife, such as bears, which attempt to eat the discarded items. The by-products of marijuana cultivation have the capability of harming the environment and wildlife and contaminating nearby water sources, such as creeks and streams.

18.    Based on my training, experience, and my participation in other investigations involving large amounts of controlled substances, I know that the following items are commonly found at drug trafficking locations such as outdoor marijuana grow sites:

a. Contraband, proceeds of drug sales, and records of transactions, drug sources, and drug customers,

b. Drug traffickers often possess weapons in order to protect themselves, their drugs, and their drug proceeds from others,

c. Drug traffickers usually keep paraphernalia for packaging, cutting, weighing, and distributing controlled substances,

d. Drug traffickers commonly maintain addresses or telephone numbers in books or papers which reflect names, addresses, and/or telephone numbers of their associates in the drug trafficking organization, even if these items might be in code,

e. Drug traffickers frequently take, or cause to be taken, photographs of themselves, their associates, their property, and their product (controlled substances),

f. Drug traffickers often maintain articles of personal property, such as personal identification, personal correspondence, delivery pouches, diaries, checkbooks, notes, photographs, keys, utility bills, and receipts.  These items are essential to establish the identities of individuals in control or possession of the premises, residences, vehicles, storage areas, and containers being searched,

g. Drug traffickers will often use cellular telephone and/or pagers to further their criminal activity,

h. Drug traffickers often maintain, on hand, large amounts of U.S. currency in order to maintain and finance their ongoing drug business, and

i. Drug traffickers often travel, sometimes great distances, to manage the production and/or distribution of controlled substances. Documentation of this travel will often be kept at these locations.

19. My awareness of these drug trafficking practices, as well as my knowledge of drug manufacturing and distribution techniques as set forth in this Affidavit, arise from the following:

a. my training in controlled substance investigations;

b. my past experience in outdoor marijuana cultivation investigations;

c. my involvement in this drug investigation;

d. what other experienced drug agents have advised me when relating the substance of debriefings of confidential informants and cooperating individuals in prior drug investigations and the results of their own drug investigations; and

e. other information provided through law enforcement channels.

## II. SUMMARY OF INVESTIGATION

20. This investigation involves a marijuana cultivation site (Upper Rose cultivation site). The Upper Rose cultivation site is located on lands owned by Sierra Pacific Industries, a private timber company. These SPI lands are located within the external boundaries of the Stanislaus National Forest and are surrounded by federal public lands administered by the U.S. Forest Service. The public roads accessing the Upper Rose Cultivation site are administered by the United States Forest Service. The Upper Rose cultivation site is located within the County of Tuolumne, State and Eastern District of California. This area is very remote area and is a

common area for clandestine outdoor marijuana cultivation.  The Upper Rose cultivation site was discovered by aerial reconnaissance on September 26, 2018, when SA Cook observed live marijuana plants in the area described below.

### III. PURPOSE OF AFFIDAVIT

21.     This affidavit is made in support of an application for a Search Warrant of the Upper Rose cultivation site, more particularly described in "Attachment A."  The GPS coordinates of the Jose Basin cultivation site are approximately: N38° 09' 01" W120° 09' 51"

### IV.  APPLICABLE LAW

22.     This affidavit is based on violations  of Title 21, United States Code, sections 841(a) (1) and 846, manufacture and conspiracy to manufacture, to distribute and to possess with intent to distribute marijuana, a Schedule I controlled substance, and violation of Title 18, United States Code, Section 1361, damaging government property.

23.     The facts and information set forth herein are based upon my knowledge and observations, observations of other law enforcement personnel, my review of investigative reports, and conversations with federal and state law enforcement officials.  This affidavit is intended to show there is probable cause for the requested search and warrant and does not purport to include every fact known to me, rather, only those facts I believe necessary to establish probable cause.  Title 21, United States Code, Section 841(a) (1), states it is unlawful for any person to knowingly or intentionally manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance.  Title 21, United States Code, Section 846, states any person who attempts or conspires to commit any offense defined in

21 USC, shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

## V. FACTS ESTABLISHING PROBABLE CAUSE

24.     On September 26, 2018, Forest Service Special Agent Joseph M. Cook observed the Upper Rose marijuana garden during a helicopter reconnaissance mission. Cook took six geolocatable photographs of the site. SA Cook compared the photographs of the site and geolocation with google maps aerial imagery and determined an approximate latitude and longitude of N38° 09' 01" W120° 09' 51". Based on county property map layers SA Cook observed that this site was located on Sierra Pacific Industries land immediately adjacent to public lands administered by the Stanislaus National Forest. SA Cook observed that Upper Rose cultivation site was within the exterior boundaries of the Stanislaus National Forest, and the roads leading to the site were public roads administered by the U.S. Forest Service

25.     On September 27, 2018, SA Cook and SA Fouch conducted a ground reconnaissance of the site. While driving on the road system adjacent to the Upper Rose cultivation site SA Fouch and SA Cook smelled the strong odor of unburnt marijuana.

26.     Based on the foregoing facts, I submit that there is probable cause to believe that the named location contains marijuana. I know from my experience and training, and through consultation with other experienced narcotics agents, that fresh bulk marijuana poses an extreme biohazard. Recently harvested marijuana gives off great volumes of heat and may spontaneously combust, resulting in a serious danger of fire. In addition, fresh marijuana can harbor mold and other bacterial elements and attract insects and pests, which are harmful to the safety and welfare of those who come into contact with it. Fresh marijuana also decomposes and liquefies rapidly. Further, decomposing fresh marijuana emits potent and noxious vapors, which pose health

threats to those who are exposed to it. The fresh bulk marijuana seizures also present inordinate security and storage problems due to the fact the U.S. Forest Service and other law enforcement agencies involved in this investigation do not have the capability to adequately store and preserve the marijuana. Because of these facts, and because the U.S. Forest Service presently has no adequate, safe storage facilities to store bulk marijuana, I further request authorization by supplemental order submitted concurrently to dispose of bulk marijuana found at the subject premises.

**VII.    CONCLUSION**

24.    Based on the foregoing, I submit that probable cause exists for the search of the location of the Upper Rose cultivation site, approximate GPS coordinates: N38° 09' 01" W120° 09' 51"W.

24.    Based on the foregoing facts and information, my training and experience and through discussions with other investigators, this affiant believes that there is sufficient probable cause to believe that the area described in Attachment "A", attached hereto and incorporated herein by reference, will contain the items set forth in Attachment "B" and probable cause exists to search the area described in Attachment "A" for the items described in Attachment "B". These items constitute evidence of the commission of criminal offenses and are contraband or fruits of the criminal offenses of conspiracy to manufacture, to distribute and to possess with the intent to

distribute marijuana, a Schedule 1 controlled substance, in violation of Title 21, United States Code, Sections 841 (a) (1), 841 (b) (1) (A) and 846.

I swear under penalty of perjury that the facts presented are true and accurate to the best of my knowledge.

Joseph M. Cook
Special Agent
United States Forest Service

Sworn and subscribed to before me on
October __3__ , 2018

THE HONORABLE ERICA P. GROSJEAN
United States Magistrate Judge

Approved as to Form:

/s/ Mark J. McKeon
MARK J. McKEON
Assistant United States Attorney

# ATTACHMENT "A"

## Area to Be Searched:

**Approximate GPS Coordinates:**

**N38° 09' 01" W120° 09' 51"**

The above-mentioned approximate GPS coordinates are west and north of Forest Road 4N81 and South and East of Forest Road 4N16, these coordinates are on Sierra Pacific Industries timberlands immediately adjacent to public lands administered by the United States Forest Service (USFS). This location is within the County of Tuolumne, State and Eastern District of California. It is forested land, consisting of trees and brush.

The search is to include marijuana grow sites and any satellite sites, including any and all structures, including tents, lean-tos, makeshift sleeping areas and campsites, as well as any vehicles parked at the drop points or property near or associated with the growing operation.

UPPER ROSE CREEK MARIJUANA CULTIVATION SITE





# ATTACHMENT "B"

## Items To Be Seized

Any item tending to establish and document a conspiracy to manufacture, distribute and/or possess with intent to distribute marijuana, a Schedule I controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 846, including, but not limited to:

1.  Controlled substances, in particular marijuana, and items commonly associated with the packaging and sales of controlled substances, including commercial plastic wrap, plastic bags, film canisters, cutting agents, scissors, scales and/or other weighing devices.

2.  Items used for the outdoor cultivation and processing of marijuana, including marijuana seeds, scissors, drying racks, nutrient reservoirs, PVC/poly pipes, hand or backpack sprayers, watering devices, growing mediums, liquid and powder nutrients, fertilizers, potting soil, pots, fungicides, insecticides, herbicides, pruning shears, irrigation supplies (including tubing, connectors, emitters, etc.), shovels and/or other gardening tools, generators, pumps and marijuana cultivation manuals.

3.  Evidence of conspiracy, including books, receipts, notes, invoices, charge card and/or credit card statements and summaries, bank statements, records, correspondence, narcotics customer lists, growing schedules, logs, journals, contracts, shopping lists for food and supplies, letters, phone records, phone books, address books, notations and other papers, and any files relating to the cultivating, transporting, selling, storing, ordering, purchasing or distributing of controlled substances.

4.  Indicia related to occupancy, residency and or ownership of property, premises, or vehicles.

5.  Photographs and /or video recordings and cameras of conspirators, associates, assets and/or controlled substances, in both tangible and electronic forms.

6.  Financial records, including expenses incurred in obtaining the equipment and items necessary for the cultivation and/or distribution of controlled substances, income derived from the sales of controlled substances, pay –owe sheets, records of legitimate income (to serve as a baseline to discern excess or unexplained income consistent with proceeds derived from drug trafficking) and general living expenses.

7. Cellular telephones, satellite telephones, personal telephone and address books, iPods/iPads and similar devices, papers and/or other items reflecting names, addresses and telephone numbers of associates in narcotics activities.

8. Devices used to conduct counter surveillance against law enforcement, including scanners, surveillance cameras, night vision devices, FLIR devices, monitors, motion sensors and/or alarms, recording devices and/or receipts or literature describing the same.

9. Firearms, ammunition and other firearms-related items commonly used by drug traffickers to protect themselves or their contraband.

10. Devices, equipment and maps used to identify and/or mark potential sites and for land navigation, to include both tangible media and electronic media, such as GPS devices, maps, charts, drawings and written directions or instructions related to areas suspected of containing marijuana cultivation operations.

11. Cash, currency in excess of $2,000.00

12. Documents indicating travel in intrastate, interstate, and foreign commerce, such as travel itineraries, plane tickets, boarding passes, motel and hotel receipts, passports and visas, credit card receipts and telephone bills.

SEALED

AO 93 (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

## for the

### Eastern District of California

ISSUED

In the Matter of the Search of
*(Briefly describe the property to be searched
or identify the person by name and address)*

Undeveloped land within the Stanislaus National Forest,
County of Tuolumne, with Approximate GPS Coordinates
N38° 09' 01" W120° 09' 51"  and Any Satellite sites

)
)
)
)
)
)

Case No.   1: 1 8 SW   0 0 3 9 3 EPG

## SEARCH AND SEIZURE WARRANT

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search
of the following person or property located in the                    Eastern            District of                    California
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property
described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

**YOU ARE COMMANDED** to execute this warrant on or before          **14 days**          *(not to exceed 14 days)*
☑ in the daytime 6:00 a.m. to 10:00 p.m.      ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the
person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the
property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory
as required by law and promptly return this warrant and inventory to                    the duty Magistrate Judge                    .
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C.
§ 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose
property, will be searched or seized *(check the appropriate box)*

☐ for _____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:     10/3/17 at 10 :30am                    *E. P.*
                                                                        *Judge's signature*

City and state:      Fesno, CA                    Erica P. Grosjean  U.S Magistrate Judge
                                                                        *Printed name and title*

AO 93  (Rev. 11/13) Search and Seizure Warrant (Page 2)

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name of any person(s) seized: | | |

| Certification |
|---|

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.


Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

# ATTACHMENT "A"

## Area to Be Searched:

**Approximate GPS Coordinates:**

**N38° 09' 01" W120° 09' 51"**

The above-mentioned approximate GPS coordinates are west and north of Forest Road 4N81 and South and East of Forest Road 4N16, these coordinates are on Sierra Pacific Industries timberlands immediately adjacent to public lands administered by the United States Forest Service (USFS).  This location is within the County of Tuolumne, State and Eastern District of California.  It is forested land, consisting of trees and brush.

The search is to include marijuana grow sites and any satellite sites, including any and all structures, including tents, lean-tos, makeshift sleeping areas and campsites, as well as any vehicles parked at the drop points or property near or associated with the growing operation.

UPPER ROSE CREEK MARIJUANA CULTIVATION SITE



Attachment "A" Page **1** of **2**



# ATTACHMENT "B"

## Items To Be Seized

Any item tending to establish and document a conspiracy to manufacture, distribute and/or possess with intent to distribute marijuana, a Schedule I controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 846, including, but not limited to:

1. Controlled substances, in particular marijuana, and items commonly associated with the packaging and sales of controlled substances, including commercial plastic wrap, plastic bags, film canisters, cutting agents, scissors, scales and/or other weighing devices.

2. Items used for the outdoor cultivation and processing of marijuana, including marijuana seeds, scissors, drying racks, nutrient reservoirs, PVC/poly pipes, hand or backpack sprayers, watering devices, growing mediums, liquid and powder nutrients, fertilizers, potting soil, pots, fungicides, insecticides, herbicides, pruning shears, irrigation supplies (including tubing, connectors, emitters, etc.), shovels and/or other gardening tools, generators, pumps and marijuana cultivation manuals.

3. Evidence of conspiracy, including books, receipts, notes, invoices, charge card and/or credit card statements and summaries, bank statements, records, correspondence, narcotics customer lists, growing schedules, logs, journals, contracts, shopping lists for food and supplies, letters, phone records, phone books, address books, notations and other papers, and any files relating to the cultivating, transporting, selling, storing, ordering, purchasing or distributing of controlled substances.

4. Indicia related to occupancy, residency and or ownership of property, premises, or vehicles.

5. Photographs and /or video recordings and cameras of conspirators, associates, assets and/or controlled substances, in both tangible and electronic forms.

6. Financial records, including expenses incurred in obtaining the equipment and items necessary for the cultivation and/or distribution of controlled substances, income derived from the sales of controlled substances, pay –owe sheets, records of legitimate income (to serve as a baseline to discern excess or unexplained income consistent with proceeds derived from drug trafficking) and general living expenses.

7. Cellular telephones, satellite telephones, personal telephone and address books, iPods/iPads and similar devices, papers and/or other items reflecting names, addresses and telephone numbers of associates in narcotics activities.

8. Devices used to conduct counter surveillance against law enforcement, including scanners, surveillance cameras, night vision devices, FLIR devices, monitors, motion sensors and/or alarms, recording devices and/or receipts or literature describing the same.

9. Firearms, ammunition and other firearms-related items commonly used by drug traffickers to protect themselves or their contraband.

10. Devices, equipment and maps used to identify and/or mark potential sites and for land navigation, to include both tangible media and electronic media, such as GPS devices, maps, charts, drawings and written directions or instructions related to areas suspected of containing marijuana cultivation operations.

11. Cash, currency in excess of $2,000.00

12. Documents indicating travel in intrastate, interstate, and foreign commerce, such as travel itineraries, plane tickets, boarding passes, motel and hotel receipts, passports and visas, credit card receipts and telephone bills.